NUMBER 13-01-836-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

JOSE ALFREDO JIMENEZ,                                                        Appellant,

v.

THE STATE OF TEXAS ,                                                             Appellee.
                                                                                                                                       

On appeal from the 138th District Court of Cameron County, Texas.
                                                                                                                      

MEMORANDUM OPINION

Before Justices Hinojosa, Yañez, and Garza
Memorandum Opinion by Justice Yañez
 
          Following a jury trial in Cameron County, appellant, Jose Jimenez, a constable, was
convicted of two counts of aggravated assault with a deadly weapon


 and two counts of
official oppression.


 The jury assessed his punishment at six years’ confinement in the
Texas Department of Criminal Justice, Institutional Division, for the aggravated assault
convictions and one year confinement in the Cameron County jail for the official oppression
convictions. 
          The record contains the trial court’s certification that this case is not a plea-bargain
case and the defendant has the right of appeal.


 
          By three issues, appellant claims: (1) the evidence is insufficient to support his
convictions; (2) ineffective assistance of counsel; and (3) that the trial court erred in
allowing the testimony of a State’s witness. We affirm.
1. Facts
          At trial, the State presented evidence that on January 18, 2001, around 2:30 p.m.,
appellant, who was not in uniform, confronted Jose Garza and his pregnant wife, Dalia
Hernandez, in the parking lot of their Cameron County trailer home. Appellant claims the
confrontation arose from a traffic altercation that occurred immediately before the
confrontation. 
          Appellant contends he and his passenger, Mike Flores, were traveling in appellant’s
unmarked vehicle on Business 83 when they were run off the road by another vehicle. 
After appellant regained control of his vehicle, he instructed Flores to plug in his portable
police siren, and appellant pursued the vehicle he believed to be responsible for the
incident. During pursuit, appellant lost sight of the vehicle, but believed that it pulled into
the parking lot of an adjacent trailer home community. In response, appellant pulled into
the lot and observed Garza getting out of his vehicle. Appellant claims he immediately
identified himself as a constable by showing his badge to Garza, and that Garza responded
with profanity. 
          Shortly thereafter, Hernandez came out of the couple’s trailer home. Appellant
testified that Garza handed Hernandez a suspicious package, and that she did not obey
appellant’s orders to remain outside the trailer home. Garza testified that appellant never
displayed his badge or identified himself as a constable and that he threatened the couple
by pointing a shotgun at them. In response, Garza retreated into his home, instructed
Hernandez to call 911, and refused to come outside until uniformed officers arrived at the
residence. After Garza retreated into his home, appellant’s deputy constable, Benito
Villareal, arrived at the scene. Following Villareal’s arrival, appellant or one of his deputies
called a towing company and ordered it to tow appellant’s vehicle. 
          Multiple Cameron County Sheriff’s deputies also arrived and persuaded Garza to
come outside his residence. Once Garza came outside, appellant instructed Villareal to
arrest Garza. After appellant issued the instruction, a brief discussion ensued regarding
the incident, and as a result, Villareal did not arrest Garza, but cited him for running a stop
sign and for having no driver’s license. Appellant left the scene shortly thereafter. 
         In exchange for payment of the towing company’s $65 hook-up fee, Garza was
permitted to negotiate the release of his vehicle, which had been hooked up to the tow
truck. Garza also provided one of the sheriff’s deputies, Cesar Diaz,


 with his version of
the story. Diaz called a sheriff’s supervisor to the scene, who was advised of the incident. 
After Garza and Hernandez stated that they wished to press charges against appellant,
Diaz immediately escorted them to the Sheriff’s station and took their statements.
2. Legal and Factual Sufficiency
         By appellant’s first issue, he argues that the evidence is insufficient to support his
convictions for aggravated assault and official oppression. While appellant does not state
whether he challenges the legal or factual sufficiency of the evidence, he argues generally
that the evidence was insufficient to support his convictions, and requests a judgment of
acquittal on all four convictions, or in the alternative, a new trial. An acquittal is the
appropriate remedy for legal insufficiency and a new trial is the appropriate remedy for
factual insufficiency.


 Because appellant requests a judgment of acquittal or a new trial,
we will address the legal and factual sufficiency of the evidence supporting all four
convictions.
          Sufficiency of the evidence is measured against the elements of the offense as
defined by the hypothetically correct jury charge for the case.


 Such a charge would
accurately set out the law, would be authorized by the indictment, and would not
unnecessarily increase the State’s burden of proof.


 
          In sub-issue one, regarding appellant’s aggravated assault convictions, appellant
maintains that the evidence adduced at trial was insufficient to support his aggravated
assault convictions because it did not prove that he committed the assaults “by intentionally
and knowingly threatening the victims with imminent bodily injury and used or exhibited a
deadly weapon during the commission of the assault.” Appellant contends that his
exhibition of a shotgun was reasonably necessary and in self-defense.  
          A legal sufficiency challenge requires us to question whether, after viewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.


 The standard is
the same for both direct and circumstantial evidence cases.


 In reviewing a challenge to
the legal sufficiency of the evidence, we consider only the evidence and inferences tending
to support the findings and disregard all evidence and inferences to the contrary.


 A
reviewing court must not consider whether it is persuaded by the State’s evidence; rather,
the trier of fact is the sole judge of the credibility of the witnesses and the weight of the
evidence.


 The jury is free to accept one version of the facts, reject another, or reject all
or any of a witness’s testimony.


 
          In a factual sufficiency review, the evidence is viewed in a neutral light, favoring
neither party.


 In this neutral light, we determine whether “the proof of guilt is so obviously
weak as to undermine confidence in the jury’s determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof.”


 A clearly wrong and
unjust verdict occurs where the jury’s finding “shocks the conscience” or “clearly
demonstrates bias.”


 We are authorized to disagree with the fact finder’s verdict even if
probative evidence exists that supports the verdict.


 
          Appellant’s convictions for aggravated assault with a deadly weapon are governed
by sections 22.01(a)(2) and 22.02(a)(2) of the Texas Penal Code.


 Section 22.01(a)(2)
of the penal code states, in relevant part, that a person commits assault if the person
“intentionally or knowingly threatens another with imminent bodily injury, including the 

person's spouse. . .”


 Section 22.02 of the Texas Penal Code states, in relevant part:
(a) A person commits an offense if the person commits assault as defined
in [section] 22.01 and the person:
 
                     . . . . 
 
(2) uses or exhibits a deadly weapon during the commission of 
the assault. . . .



          In claiming self-defense, a person must reasonably believe that the deadly force is
immediately necessary to protect himself or another from the use of unlawful deadly
force.



          At trial, Garza and Hernandez testified that appellant pointed a shotgun at them,
threatened to shoot them, which caused them to fear for their lives. Garza claimed
appellant never identified himself as a constable or showed him a badge. Appellant does
not dispute that he pointed a shotgun at Garza and his wife, but claims that he did so
because he feared for his life. However, Villareal, who witnessed most of the incident,
testified that deadly force was not justified. According to Villareal, Garza gave no indication
that he had or was going to use a weapon. Officer Diaz also testified that after he arrived
at the scene, appellant and Garza were arguing, and appellant was dressed like a crook. 
Sheriff Roel Flores also testified that because of appellant’s attire, he mistakenly thought
appellant was the tow-truck operator. 
          In viewing the evidence in the light most favorable to the State, while disregarding
all evidence to the contrary, we conclude appellant failed to establish self-defense. Thus,
we hold that the evidence is legally sufficient to support appellant’s convictions for
aggravated assault with a deadly weapon.


 Further, in viewing the evidence in a neutral
light, we also conclude that the evidence is not so weak as to undermine confidence in the
jury’s finding that appellant committed the assaults.


 
          In sub-issue two, regarding the legal sufficiency of the evidence supporting
appellant’s convictions for official oppression, appellant argues that the State failed to
prove that he intentionally and knowingly “. . . abused his official duties by way of official
oppression.” 
          Section 39.03(a) of the Texas Penal Code governs appellant’s two convictions for
official oppression.


 It states, in relevant part: 
(a) a public servant acting under the color of his office or employment 
commits an offense if he:
                     (1) intentionally subjects another to mistreatment or to arrest,
detention, search, seizure, dispossession, assessment, or lien
that he knows is unlawful;
(2) intentionally denies or impedes another in the exercise or
enjoyment of any right, privilege, power, or immunity, knowing
his conduct is unlawful; . . . .


 
“Unlawful” means criminal or tortious conduct.


 Section 6.03 of the penal code defines
knowledge.


 It provides, in relevant part: 
(a) A person acts intentionally, or with intent, with respect to
the nature of his conduct or to a result of his conduct when it
is his conscious objective or desire to engage in the conduct or
cause the result; 
 
(b) A person acts knowingly, or with knowledge, with respect
to the nature of his conduct or to circumstances surrounding
his conduct when he is aware of the nature of his conduct or
that the circumstances exist. A person acts knowingly, or with
knowledge, with respect to a result of his conduct when he is
aware that his conduct is reasonably certain to cause the
result.



          In this case, count three of the indictment alleged that appellant intentionally
subjected:
JOSE GARZA to detention or seizure or dispossession or assessment . . .
[by instructing] his deputy to unlawfully arrest JOSE GARZA, or instruct[ing]
his deputy to cite JOSE GARZA for a stop sign offense or disregarding a
stop sign that the defendant knew was unlawful, and the defendant was
then and there acting under color of his office or employment. . . .
Count four of the indictment alleged that appellant intentionally subjected:
JOSE GARZA to detention or seizure or dispossession or assessment . . .
[when] defendant ordered or instructed the vehicle of JOSE GARZA to be
towed from victim’s [sic] residence that [sic] the defendant knew was [sic]
unlawful, and the defendant was then and there acting under color of his
office or employment . . . .
          According to count three, the State had to prove that appellant, while acting under
the color of his office, intentionally instructed his deputy to: (1) unlawfully arrest Garza or
cite him for a stop sign offense; and (2) that appellant knew his conduct was unlawful. 
Additionally, in count four of the indictment, the State had to prove that appellant
intentionally: (1) ordered Garza’s vehicle towed; and (2) that appellant knew towing Garza’s
vehicle was unlawful.
          The jury charge provided that, unless a constable displays a badge showing his title,
he is not authorized to arrest or accost a driver on a highway for a motor vehicle violation. 
The charge stated that an officer is authorized to: (1) arrest a person for a traffic violation;
(2) temporarily detain a person to investigate suspicious activity; and (3) make a
warrantless arrest when probable cause exists that a crime has been committed. The
charge stated that it is unlawful for a person operating a motor vehicle to refuse to stop,
flee or elude an officer when given a visual or audible signal, by hand, voice, emergency
light, or siren, to stop. According to the charge, the officer giving the signal must be in
uniform and his vehicle must be appropriately marked showing that it is an official police
vehicle. Additionally, the jury was instructed that the State had to prove that appellant
knew his conduct was unlawful in order to support a guilty verdict on each count of official
oppression.
          With respect to an officer’s authority to tow, the jury charge stated that officers have
a limited right to impound a vehicle. The charge set forth the factors used to determine the
reasonableness of an impoundment: (1) the availability of someone at the scene to whom
police could give possession; (2) whether the vehicle was impeding traffic or was a danger
to public safety; (3) whether the vehicle was locked; (4) whether the duration of arrestee’s
detention required police to protect the property; (5) whether there was some reasonable
connection between the arrest and the vehicle; and (6) whether the vehicle was used in the
commission of a crime. 
          Although appellant argues the evidence is legally insufficient to support his
convictions for official oppression because the State failed to prove he intentionally and
knowingly violated the law, we disagree. The evidence introduced at trial supports the
jury’s finding that appellant acted unlawfully against Garza and that appellant knew his
conduct was unlawful. 
          Garza testified that on the day in question, his pregnant wife sent him to the store
to buy groceries. Garza stated that on his way home, he was not speeding and did not
violate any law. He also did not observe anyone following him. Garza claims that when
he got home, his wife met him outside. As he handed the groceries to his wife, Garza
claims that a man dressed like a crook confronted him with a shotgun and was cussing at
him and his wife. Garza testified that during the incident, the man did not identify himself
or show him a badge. As a result, Garza retreated into his house and instructed his wife
to call 911. While inside, Garza claims appellant was banging his fist on his car and
demanding that Garza and his wife come outside. Garza also stated that appellant
threatened to shoot them if they did not come outside. After Garza went outside, Garza
told Diaz that appellant looked like a “crook.” Appellant became angry and began to shout
“. . . arrest this guy. It is my call. I want to arrest him.” He also heard appellant say to his
deputy, “I want this judge to hear this case.” 
          In contrast, appellant testified that he ordered the arrest and citation of Garza, and
the towing of his vehicle because he thought Garza ran a stop sign, which caused him to
swerve off the road. Although appellant admits that he confronted Garza before any other
officers arrived and that he was not in uniform, he maintains that he identified himself and
displayed his badge. During the confrontation, appellant was wearing a beanie, sweat
pants, a flannel shirt, had facial hair, and wore his hair in a ponytail. According to
appellant, Garza handed his wife a suspicious package, which caused appellant to believe
that the couple was involved in drug activity. Villareal, however, testified that when he
arrived, he had no reason to believe that Garza or his wife were involved in drug activity. 
Based on appellant’s own observations, he ordered his deputies to arrest or cite Garza and
tow his vehicle. 
          Finally, appellant testified regarding his knowledge of the law. According to
appellant, he: (1) attended the police academy; (2) passed the State’s officer exam; (3)
was certified by the Texas Commission on Law Enforcement; (4) attended forty hours of
additional law enforcement training every two years; and (5) had approximately fourteen
years of experience as a constable. 
          Flores, appellant’s passenger, testified that he witnessed a vehicle run a stop sign,
but could not identify the make, model, or color of the vehicle. Flores stated that appellant
did not request officer assistance over the radio until they arrived at the trailer community. 
Flores stated that when appellant confronted Garza, he displayed his badge and identified
himself as a constable. 
          Texas Ranger Rolando Castaneda testified as an expert regarding police
procedures for searches and seizures. According to Castaneda, if an officer cites a person
for a traffic violation and no arrest is made, and the suspect’s vehicle is parked legally on
private property, it is unlawful to tow the vehicle. He stated that it is lawful to seize a
vehicle to obtain a search warrant. Castaneda also explained that if an arrest is made and
the vehicle is evidence of a crime, such as one involving drugs, or reckless driving where
an impact occurs, it is lawful to tow the vehicle. Appellant’s deputy constables, Villareal
and Contreras, testified that their office did not normally tow vehicles on private property,
unless it was at the owner’s request.
          The record reflects that during the incident, Garza’s vehicle was parked legally on
private property, no search warrant was obtained for Garza’s home or vehicle, drugs were
not found in Garza’s home or vehicle, and Garza was cited only for running a stop-sign and
for failure to have a driver’s license. At the conclusion of the incident, Garza was not
arrested or taken to jail, but had to pay $65 to the tow company to secure the release of
his vehicle at the scene.
          In viewing the evidence in the light most favorable to the verdict, we conclude that
in this case, the jury, as the sole trier of fact and credibility of the witnesses, could have
believed the victims’ testimony and disbelieved that of the defense witnesses.


 Thus, we
conclude that a rational trier of fact could have found all of the essential elements of official
oppression beyond a reasonable doubt.


 Further, in viewing the evidence in a neutral
light, we also conclude that the evidence is not so weak as to undermine confidence in the
jury’s findings.


 Accordingly, we overrule appellant’s first issue. Ineffective Assistance of Counsel
          In appellant’s second issue, he claims ineffectiveness of counsel because his trial
counsel failed to object to hearsay statements. 
          In order to prevail on a claim of ineffective assistance of counsel, appellant must
show by a preponderance of the evidence that: (1) trial counsel’s performance was
deficient in that it fell below the prevailing professional norms; and (2) the deficiency
prejudiced appellant and but for the deficiency, a reasonable probability exists that the
result of the proceeding would have been different.


 A reasonable probability is a
probability sufficient to undermine confidence in the outcome.


 
          The determination regarding whether a defendant received effective assistance of
counsel must be made according to the facts of each case.


 An appellate court looks to
the totality of the representation and the particular circumstances of the case in evaluating
the effectiveness.


 
          There is a strong presumption that counsel’s conduct fell within the wide range of
reasonable professional assistance.


 To defeat the presumption of reasonable
professional assistance, “any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged ineffectiveness.”


 In
most cases, a silent record that provides no explanation for counsel’s actions will not
overcome the strong presumption of reasonable assistance.


 
          Here, appellant failed to meet the first prong of Strickland. Appellant’s trial counsel
timely filed a motion for new trial. The motion, however, does not provide an explanation
for counsel’s failure to object to the hearsay statements nor does it cite ineffective
assistance of counsel as grounds for granting a new trial. Consistent with Strickland, we
must presume that all significant decisions were made in the exercise of reasonable
professional judgment.


 Therefore, we conclude appellant has failed to show that but for
trial counsel’s failure to object to the hearsay statements, a reasonable probability exists
that the result of the proceeding would have been different.


 Appellant’s second issue is
overruled. 
4. Testimony of Carlos Rodriguez
          By appellant’s third issue, he argues that the trial court erred in allowing testimony
by Carlos Rodriguez, who testified that he had never seen appellant on Celina Ochoa
Road, which was the location where Garza allegedly ran the stop sign. Appellant claims
that the testimony inappropriately bolstered previous testimony given by Garza. The State
contends that Rodriguez’s testimony corroborated Garza’s previous testimony–that Garza
had never traveled on Celina Ochoa Road.
          We review a trial court’s evidentiary ruling under an abuse-of-discretion standard.


 
If the ruling was correct on any theory of law applicable to the case, in light of what was
before the trial court at the time the ruling was made, then we must uphold the judgment.


 
          The record reflects that Celina Ochoa Road is a half-mile long, dead-end road. At
trial, Garza testified that he had never traveled on Celina Ochoa Road. Rodriguez later 
testified that: (1) the road is used primarily by its residents; and (2) he has lived on Celina
Ochoa Road for twenty-eight years, did not know Garza, and had never seen him before. 
Evidence that corroborates another witness’s story, or enhances inferences to be drawn
from another source of evidence that furthers a fact of consequence, should not be
considered bolstering.


 
          In reviewing the record, we conclude that the trial court did not abuse its discretion
because Rodriguez’s testimony furthered Garza’s previous testimony regarding Celina
Ochoa Road.


 Accordingly, appellant’s third issue is overruled.
          The judgment of the trial court is affirmed.
 
                                                                                                                      
                                                               LINDA REYNA YAÑEZ
                                                                           Justice



Do not publish. Tex. R. App. P. 47.2(b).

Memorandum opinion delivered and filed this the
30th day of December, 2004.